UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:13-CR-012 JD |
| ) | |
| JOHN CARLISLE ) | |

## **OPINION AND ORDER**

Mr. Carlisle plead guilty to five counts of aiding and abetting the making of false statements and reports regarding mortgage loans, in violation of 18 U.S.C. §§ 1014 and 2. The sentencing hearing began on December 6, 2013. [DE 41.] During the December 6 hearing, Mr. Carlisle testified in support of his argument that he should receive a reduction for role in the offense under Sentencing Guidelines § 3B1.2. Following Mr. Carlisle's testimony, the government requested that the sentencing hearing be bifurcated and continued to allow the government time to prepare witnesses to rebut Mr. Carlisle's testimony. The Court granted that request, without objection from the Defendant. The sentencing hearing was to have resumed on December 19, 2013, but was twice continued. [DE 46, 49.]

The sentencing hearing resumed on February 4, 2014. [DE 50.] At the beginning of that hearing, the Court was made aware of a potential conflict of interest involving Mr. Carlisle's attorney, Robert Gevers. The Court heard proffers from Mr. Gevers and the government regarding the nature of the potential conflict, and then continued the sentencing hearing in order to research whether Mr. Gevers needs to be disqualified from continuing to represent Mr. Carlisle in this matter. The Court has considered the issue and determines that, based on the current record, there is insufficient basis to require disqualification of Mr. Gevers.

## I. Factual Background

Towards the beginning of the February 4 sentencing hearing, Mr. Gevers alerted the Court that prior to representing Mr. Carlisle in this case, Mr. Gevers had met with Ryan Webb and Johnny Stine regarding their possible representation. Mr. Webb and Mr. Stine were co-conspirators in the mortgage fraud scheme in which Mr. Carlisle participated.[1] Mr. Gevers stated that he did not recall the meetings but doesn't dispute they occurred. However, as relayed by both Mr. Gevers and the government, Mr. Webb claims to have met with Mr. Gevers at the attorney's office in approximately June 2012 and to have discussed with Mr. Gevers the facts surrounding Mr. Webb's involvement in the scheme.[2] Mr. Webb recalls the disclosures being extensive. Mr. Webb also claims to have given Mr. Gevers a dollar, in order to ensure any disclosures were protected by the attorney-client privilege. Mr. Gevers does not recall Mr. Webb having given him a dollar, but did state it is his regular practice when meeting with a potential client to ask the potential client to give Mr. Gevers a dollar. Mr. Webb claims there was a second meeting in which Mr. Stine also participated.

Neither Mr. Webb nor Mr. Stine eventually retained Mr. Gevers as counsel in the matter. Instead, both retained attorney Patrick Murphy, who represented both in the proceedings before the Court. Mr. Gevers stated that because he was not retained by Mr. Webb or Mr. Stine, he did not open a file related to either of them. For that reason, the names of Mr. Webb and Mr. Stine

---

[1] Mr. Webb and Mr. Stine were indicted in case number 3:12-cr-73. The Court is familiar with both individuals, as both were convicted and sentenced by the undersigned judge. Mr. Webb and Mr. Stine were each charged with and convicted of one count of making a false statement and report regarding a mortgage loan, in violation of 18 U.S.C. §§ 1014 and 2. Mr. Webb was sentenced to 21 months imprisonment. His sentence was later reduced to 15 months on a Rule 35 motion by the government. The Court understands that Mr. Webb has been released from the custody of the Bureau of Prisons. Mr. Stine was sentenced to 21 months imprisonment and appears to remain in custody.

[2] Mr. Webb was present at but did not testify during the February 4 hearing, so any claims attributed to Mr. Webb were relayed to the Court through either Mr. Gevers or the government.

did not appear in the conflict check performed when Mr. Gevers began his representation of Mr. Carlisle. When asked by the Court, Mr. Gevers stated that he does not recall the information he was told by Mr. Webb or Mr. Stine, but that he does not dispute that the meetings occurred or that they discussed the facts of this case.

In light of the potential conflict, Mr. Gevers stated that he was uncertain as to whether he should continue representing Mr. Carlisle in the case but was prepared to withdraw as necessary. The government stated that its position is that Mr. Gevers has a conflict of interest that requires him to withdraw, although the government did not formally move to disqualify Mr. Gevers.

Mr. Carlisle (through Mr. Gevers) indicated that he would waive any potential or actual conflict of interest. Both the government and Mr. Gevers indicated that Mr. Webb is not willing to waive any conflict of interest. Further, the government believes that the testimony of both Mr. Webb and Mr. Stine is necessary to rebut the testimony given by Mr. Carlisle at the December 6 sentencing hearing.

**II. Analysis**

The Sixth Amendment gives criminal defendants the right to hire attorneys of their choice. *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011). However, a defendant's choice of counsel may be overridden (and their privately retained counsel may be disqualified) where an actual conflict of interest exists or where there is a serious potential for conflict. *Id.* at 748–49. If a conflict amounts to a breach of the applicable code of professional ethics, such a conflict is an actual conflict sufficient to overcome the defendant's right to choice of counsel. *Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004). Additionally, the Court should disqualify counsel if there exists a concrete conflict of interest which, although not a technical

3

violation of professional ethics, nonetheless impedes the attorney's ability to provide effective assistance to the defendant. *Id.* In evaluating whether a conflict exists, the Court presumes in favor of a defendant's choice of counsel, and the "risk of non-persuasion rests with the prosecution rather than the defendant." *Id.*

The Local Rules of this District adopt the Indiana Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct as the rules governing attorneys practicing in this Court. N.D. Ind. L.R. 83-5(e). Relevant here, the Indiana Rules of Professional Conduct prohibit, in some instances, the representation of a person who has interests adverse to a former client, Ind. R. Prof'l Conduct 1.9, or to a former prospective client, Ind. R. Prof'l Conduct 1.18. Therefore, in order to determine the nature of Mr. Gevers's potential conflict the Court must first determine the nature of the relationship that Mr. Gevers had with Mr. Webb and Mr. Stine.

### A     Nature of Mr. Gevers's Relationship with Mr. Webb and Mr. Stine

In Indiana, an attorney-client relationship may be expressly formed, such as with the signing of an agreement and the payment of legal fees, or may also be formed by implication through the conduct of the parties. *In re Anonymous*, 655 N.E.2d 67, 70 (Ind. 1995). "An important factor is the putative client's subjective belief that he is consulting a lawyer in his professional capacity and on his intent to seek professional advice." *Id.* However, there must be evidence that the attorney-client relationship is consensual, that is both the attorney and the client have consented to its formation. *In re Kinney*, 670 N.E.2d 1294, 1297 (Ind. 1996).

Here, it does not appear that Mr. Gevers ever formed an attorney-client relationship with either Mr. Webb or Mr. Stine. First, there does not appear to have been any express retention of Mr. Gevers by either Mr. Webb or Mr. Stine, nor any signed agreement by either. Second, there

4

has been no testimony from either Mr. Webb or Mr. Stine that they believed an attorney-client relationship had been formed. Third, there is currently no evidence that Mr. Gevers provided any legal advice to either Mr. Webb or Mr. Stine. Fourth, the evidence currently before the Court shows that the purpose of the meeting or meetings with Mr. Gevers was only to consider Mr. Gevers for potential representation. Both Mr. Webb and Mr. Stine made an affirmative decision not to retain Mr. Gevers, but rather to retain Mr. Murphy to represent them.

The only fact before the Court that could raise the inference of the formation of an attorney-client relationship was that Mr. Webb gave Mr. Gevers one dollar, which could be construed as the payment of legal fees. However, the fact that Mr. Webb gave a single dollar to Mr. Gevers is not dispositive of the nature of the relationship between them. *See, e.g.,* Restatement (Third) of the Law Governing Lawyers § 14 cmt. a (2000) ("When a fee is due, the person owing it is not necessarily a client."); *State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 394 (Mo. Ct. App. 2011) ("Mere payment of a fee without proof that the payor received legal advice or assistance from the attorney or that the attorney intended to provide the client with legal advice or assistance, does not show an attorney-client relationship."). It appears, based on the current record, that Mr. Webb's intent in giving the dollar to Mr. Gevers was not to retain Mr. Gevers, but rather to ensure that any information told to Mr. Gevers during the initial consultation was protected against potential disclosure by Mr. Gevers. Such disclosures are in fact protected under the Indiana Rules of Professional Conduct, regardless of whether an attorney-client relationship is formed. Ind. R. Prof'l Conduct 1.18(b).

Based on that analysis and the limited information currently before the Court, the Court does not believe that Mr. Webb or Mr. Stine ever became clients of Mr. Gevers. Instead, both were at most prospective clients of Mr. Gevers.

### B. Analysis of the Potential Conflict with Prospective Clients

Rule 1.18 of the Indiana Rules of Professional Conduct governs an attorney's responsibilities to a prospective client. The rule states, in relevant part:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensures, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter . . . .

Ind. R. Prof'l Conduct 1.18. Thus, in order to find a conflict under this rule, the Court must consider two factors: (1) whether either Mr. Webb or Mr. Stine were prospective clients in the same or a substantially related matter and (2) whether Mr. Gevers received information from either Mr. Webb or Mr. Stine that could be significantly harmful to them in this matter.

The first factor is present in this case. Based on the information before the Court, it appears that Mr. Webb and Mr. Stine were "prospective clients" because they considered hiring Mr. Gevers to represent them in a case which is substantially related to Mr. Carlisle's case. While Mr. Carlisle was indicted separately from Mr. Webb and Mr. Stine, all of the cases cover

the same mortgage fraud scheme and Mr. Carlisle has admitted to having conspired with Mr. Webb and Mr. Stine.

The second factor is a more difficult to determine on the current record. Where a prospective client did not provide any information to the attorney that could be significantly harmful to the prospective client, disqualification is not required. Ind. R. Prof'l Conduct 1.18 cmt. 4 ("Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter."); *United States v. Wiley*, No. 2:09-CR-200, 2011 WL 779895, at *4 (N.D. Ind. Feb. 28, 2011) (refusing to disqualify defense counsel who had previously consulted with government's cooperating witness regarding the same matter); *Pelley v. State*, 901 N.E.2d 494, 506–08 (Ind. 2009) (affirming conviction over the argument that special prosecutor should have appointed where defendant had previously consulted with elected prosecutor while the prosecutor was previously in private practice), *abrogated on other grounds by Austin v. State*, 997 N.E.2d 1027, 1029 (Ind. 2013); Restatement (Third) of the Law Governing Lawyers, § 15 cmt. c (2000) ("prohibition exists only when the lawyer has received from the prospective client information that could be significantly harmful to the prospective client in the matter.").

Based on the current record, the Court cannot conclude that any information provided by Mr. Webb or Mr. Stine to Mr. Gevers could be significantly harmful to either Mr. Webb or Mr. Stine. First, the Court has no information before it regarding the content of the disclosures. Moreover, both Mr. Webb and Mr. Stine have already been convicted of and sentenced for their

7

crimes. The parties have not demonstrated, and the Court cannot currently envision, any harm that could result to either Mr. Webb or Mr. Stine through having disclosed to Mr. Gevers details of a crime for which they have already been convicted. Finally, the fact that Mr. Gevers may have to cross examine Mr. Webb or Mr. Stine during the course of the sentencing hearing does not provide any additional basis to compel disqualification under Rule 1.18. *See Wiley*, 2011 WL 779895, at *4 ("While [the witness] has stated that she does not want to be cross-examined by [the attorney], there had been no mention of any information relayed by [the witness] to [the attorney] that would compel disqualification under Rule 1.18.").

Accordingly, the Court cannot determine on the current record that Mr. Gevers's continuing representation of Mr. Carlisle in this situation would violate Rule 1.18 of the Indiana Rules of Professional Conduct.

### C. Mr. Carlisle's Right to Effective Representation

In all instances the Court must strive to ensure that Mr. Carlisle is provided constitutionally effective representation. Here, the nature of Mr. Gevers's relationship with Mr. Webb and Mr. Stine raises some question regarding effective representation because the rules foreclose Mr. Gevers from using or revealing any information that he obtained from the consultations with Mr. Webb or Mr. Stine. Ind. R. Prof'l Conduct 1.18(b). Additionally, when faced with the possibility of cross examining a former prospective client, there exists "at least a possibility that [an attorney] might not engage in a full cross-examination of [a witness] based on [the witness's] status as either a former client or prospective client." *United States v Lustyik*, No. 2:12-CR-645, 2012 WL 6574425, at *11 (D. Utah Dec. 27, 2012). Thus, if Mr. Gevers's ability to cross-examine either Mr. Webb or Mr. Stine is likely to be limited by the prior consultations,

8

disqualification may be required. *United States v. Combs*, 222 F.3d 353, 360–62 (7th Cir. 2000) (affirming conviction after disqualification of counsel, where counsel had also previously represented key government witness).

Again, based on the current record, the Court does not find sufficient information to persuade the Court that Mr. Gevers's cross-examination of Mr. Webb or Mr. Stine would be limited by the prior consultations. While Mr. Webb alleges that the disclosures were extensive, Mr. Gevers has stated that he does not recall the information that he was told by Mr. Webb or Mr. Stine, nor does the record indicate that Mr. Gevers has any notes regarding the disclosures. Further, there are substantial alternate sources through which Mr. Gevers could have obtained knowledge of any information that had been provided by Mr. Webb and Mr. Stine, including their own admissions in open court, from Mr. Carlisle during the current representation, or from the Presentence Report in this case. Based on this uncertain record, the Court does not conclude that disqualification is necessary at this time.[3]

### III. Conclusion

Based on the information currently before it, the Court cannot determine that Mr. Gevers must withdraw or be disqualified from representing Mr. Carlisle in this case, for the reasons stated above. The Court accordingly declines to either order Mr. Gevers to withdraw or to disqualify him at this time, provided that Mr. Carlisle formally waives in writing any potential conflict of interest. However, the Court is cognizant that other information may exist that is currently not on the record which could weigh on the necessity of disqualification. Accordingly,

---

[3] Of course, Mr. Gevers has an independent obligation to comply with the Rules of Professional Conduct and may determine, based on his own knowledge of the case, that any cross examination of Mr. Webb or Mr. Stine would be limited by the previous consultations. If so, the Court will respect that analysis and would likely grant a motion to withdraw. However, given the presumption in favor of Mr. Carlisle's counsel of choice and based on the scarcity of the current record, the Court cannot on its own determine that disqualification is necessary under these circumstances.

the Court affords the parties time to file any motions related to the potential conflict of interest. If Mr. Gevers deems it advisable, he may file a motion to withdraw. Any such motion by Mr. Gevers shall be filed by **March 19, 2014**. If Mr. Gevers does not wish to withdraw, Mr. Carlisle shall file a written waiver of any potential conflict. Further, if Mr. Gevers does not wish to withdraw, the government may file a formal motion to disqualify Mr. Gevers. Any such motion by the government shall be filed by **March 26, 2014**. If the government wishes to disqualify Mr. Gevers, it should provide additional evidence regarding the nature of the harmful disclosures from Mr. Webb and Mr. Stine and should address the Court's concerns regarding how any disclosures could be significantly harmful to either under these circumstances. If necessary, the government may move to have any evidence in support of its motion reviewed *in camera*. If no relevant motion is filed by either party within the time specified, the Court will contact counsel to reset the sentencing hearing in this case.

    SO ORDERED.

    ENTERED:  March 12, 2014

                                                      /s/ JON E. DEGUILIO
                                                  Judge
                                                  United States District Court